IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| THOMAS PETTIS, | ) | 4:06CV3177 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| UNKNOWN WILLIAMS, Dr., and | ) | |
| MICHELLE UNKNOWN, Asst., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendants' Motion for Summary Judgment. (Filing No. 26.) As set forth below, the Motion is granted.

## I.   BACKGROUND

Plaintiff Thomas Pettis ("Pettis") filed his Complaint in this matter on July 26, 2006. (Filing No. 1.) Plaintiff's Complaint is brought pursuant to 42 U.S.C. § 1983 and, liberally construed, alleges that Defendants violated Plaintiff's Eighth Amendment rights to receive medical treatment while incarcerated. (Filing No. 1.)

Defendants filed their Motion for Summary Judgment on July 7, 2008. (Filing No. 26.) Along with their Motion, Defendants also filed an Index of Evidence and Brief in Support. (Filing Nos. 28 and 29.) Despite having nearly four months in which to do so, Plaintiff did not file an opposition or any other response to Defendants' Motion. (*See* Docket Sheet.)

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of

law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." *Id.*

Defendants have submitted a statement of material facts in accordance with the court's Local Rules. However, Plaintiff has not submitted any "concise response" to those facts. Further, Defendants submitted evidence which was properly authenticated by affidavit. Plaintiff has not. This matter is deemed fully submitted and the material facts set forth by Defendants are "deemed admitted" due to Plaintiff's failure to controvert those facts.

## II. RELEVANT UNDISPUTED FACTS

1. At all relevant times, Pettis was a prisoner incarcerated at the Tecumseh State Correctional Institution ("TSCI") within the Nebraska Department of Correctional Services. (Filing No. 1.)

2. Defendant Williams is a physician licensed to practice medicine in the State of Nebraska. He was previously employed by CMS, which is a private organization that contracted with the TSCI in Tecumseh, Johnson County, Nebraska, to provide medical services to inmates. (Filing No. 28-2, Attach. 1, at CM/ECF p. 1.)

3. Beginning September 1, 2005, Correct Care Solutions ("CCS") took over the contract to provide medical care to inmates at TSCI. Most of the medical personnel, including Defendants, remained the same. (*Id.*)

4. Defendant Michelle Eltiste was a physician's assistant who provided care and treatment to inmates at the TSCI. (*Id.* at CM/ECF p. 2.)

5. In his Complaint, Pettis claims that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment in that they were deliberately indifferent to his ear and throat pain. (Filing No. 1.) Pettis also seeks to hold Defendants liable for medical negligence under Nebraska state law. (*Id.*)

6. According to Pettis, he began having ear and throat pain in March or April of 2005. (*Id.*) Pettis alleges that he reported his complaints to Dr. Williams and was simply told to take Ibuprofen. (*Id.*) Pettis alleges that Dr. Williams ignored his ear pain.

7. Pettis alleges that after three months, he began developing swelling in his throat area. Plaintiff states that he was placed in the prison hospital and began a course of antibiotics. (*Id.*) Plaintiff further states that he began to see improvements in his medical conditions. (*Id.*)

8. Pettis alleges that his symptoms started over again and he was hospitalized again. Pettis requested to be seen by a specialist, and Dr. Williams indicated that there was nothing a specialist could do that Dr. Williams could not do himself. (*Id.*) Plaintiff was placed on several types of antibiotics and later underwent a procedure involving his throat. (*Id.*)

9. Dr. Williams is familiar with Pettis' medical treatment. Mr. Pettis first brought his condition to Dr. Williams' attention on February 22, 2005. (Filing No. 28-2, Attach. 1, at CM/ECF p. 2.) At that time, Pettis was examined and diagnosed with sinusitis and pharyngitis and was placed on antibiotics. (*Id.*)

10. Over the course of the next several months, Dr. Williams treated Pettis on at least 10 occasions. Pettis was personally examined by Dr. Williams on each of the following dates in 2005: March 11, March 25, April 4, April 8, April 19, May 3, May 10, May 17, May 20, and May 24. Mr. Pettis' ears were washed out on May 20, 2005 for excessive ear wax. (*Id.* at CM/ECF pp. 2-3.)

11. On June 10, 2005, Pettis complained of right ear pain and throat pain. Upon examination, Dr. Williams noted that Pettis' throat was reddened and irritated. Several different antibiotics were ordered to treat both Pettis' ear pain and throat pain. (*Id.* at CM/ECF p. 3.)

12. Dr. Williams examined Pettis again on June 27, 2005. Dr. Williams diagnosed a pharyngeal cyst and admitted Pettis to the prison hospital for treatment with IV antibiotics. (*Id.*) Pettis was hospitalized through July 19, 2005. During that time, numerous efforts were made to place Pettis on medication that would resolve his throat pain and the pharyngeal cyst. (*Id.*)

13. After examining Pettis' cyst, Dr. Williams determined on July 18, 2005, that incision and drainage of the cyst was medically indicated. The procedure was performed by Dr. Williams without incident and Pettis reported "instant relief." (*Id.*) Pettis was discharged from the hospital on or about July 19, 2005. (*Id.* at CM/ECF pp. 3-4.)

14. Dr. Williams continued to treat Pettis until September 2, 2005, when he was transferred to another facility. By August 2, 2005, Dr. Williams reported that Pettis' pharyngeal cyst was completely resolved. (*Id.* at CM/ECF p. 4.)

15. In addition to the present lawsuit, Pettis sued Dr. Williams in Nebraska State District Court alleging medical malpractice in connection with the same care and treatment at issue in this lawsuit. (*Id.*)

16. Pettis never identified an expert witness who would opine that Dr. Williams breached the applicable standard of care. The action was recently dismissed. (*Id.*)

17. Pettis contends that Dr. Williams was negligent (or deliberately indifferent) by failing to order a biopsy on the pharyngeal cyst. However, a biopsy was not medically indicated and a medical doctor with a similar level of knowledge, skill and experience would not have ordered a biopsy of the cyst. (*Id.*; Filing No. 28-3, Attach. 2, at CM/ECF p. 2.)

18. It is Dr. Williams' opinion, to a reasonable degree of medical certainty, that none of Pettis' alleged injuries and damages were caused by the medical providers at TSCI. Dr. Williams further opines that all of the medical providers at TSCI provided Pettis with proper care and treatment and no one was deliberately indifferent to Pettis' medical needs. (Filing No. 28-2, Attach. 1, at CM/ECF p. 5.)

19. In addition, Dr. Randy Kohl has reviewed the medical care and treatment provided to Pettis while an inmate at TSCI. Dr. Kohl is the medical director for the Nebraska Department of Correctional Services and has held that position since 2001. (Filing No. 28-3, Attach. 2, at CM/ECF p. 1.)

20. It is Dr. Kohl's opinion, based on a reasonable degree of medical certainty, that the care provided by the medical staff at TSCI was, at all times, in compliance with the generally recognized standards of care, skill and knowledge as used in Lincoln, Lancaster County, Nebraska, or similar communities by medical practitioners and providers in the field of primary care who attend patients under circumstances the same as or similar to the present case. (*Id.*)

## III. ANALYSIS

### A. Standard of Review

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See also* *Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate their allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B. Plaintiff's Eighth Amendment Claim

Liberally construed, Plaintiff's Complaint is brought pursuant to 42 U.S.C. § 1983 and alleges that Defendants violated Plaintiff's Eighth Amendment rights to receive medical care while incarcerated. (Filing No. 1.) As set forth below, Defendants provided Plaintiff with appropriate medical care in accordance with their

obligations under the Eighth Amendment. Therefore, no Eighth Amendment violation occurred and Defendants are entitled to summary judgment.

To sustain a claim under the Eighth Amendment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The plaintiff must allege and show that he suffered objectively serious medical needs, and that officials actually knew of but deliberately disregarded those needs. *Hartsfield v. Colburn*, 491 F.3d 394 (8th Cir. 2007). "[S]ociety does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* (citing *Estelle*, 429 U.S. at 103-104). However, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Davis v. Hall*, 992 F.2d 151, 153 (8th Cir. 1993) ("Disagreement with a medical judgment is not sufficient to state a claim for deliberate indifference to medical needs.").

A "serious" medical need must be either obvious to a layperson or supported by medical evidence, such as a physician's diagnosis. *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999). Further, the failure to diagnose and treat a medical condition "does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge. As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citations omitted). Bare assertions or a "self-diagnosis," without more, are not

enough to sustain an Eighth Amendment claim. *Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994); *see also Long v. Nix*, 86 F.3d 761 (8th Cir. 1996) ("Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment.")

While the court finds that Plaintiff has not submitted any evidence to show that his medical needs were serious, the evidence is clear and undisputed that there was no "deliberate indifference" on the part of Defendants towards Pettis' medical needs. Plaintiff's allegations of "deliberate indifference" relate entirely to his "bare assertion" that he did not receive appropriate treatment (such as a biopsy) relating to his pharyngeal cyst, which Plaintiff believes he needed. However, as set forth above, Plaintiff has no right to receive a particular course of treatment. Defendants have submitted physician affidavits showing that the treatment Plaintiff received was extensive and more than adequate. Indeed, Plaintiff received ongoing treatment for his medical conditions, including at least 10 physician visits, several courses of antibiotics, pain medication, two hospitalizations, surgery to drain the cyst, and other care. (Filing No. 28-2, Attach. 1 at CM/ECF pp. 2-4.) All together, Plaintiff received approximately six months of medical treatment resulting in a complete resolution of the pharyngeal cyst. Plaintiff has not submitted any evidence controverting these facts or showing that his medical conditions were deliberately disregarded or ignored by Defendants.

In short, Plaintiff's disagreement with Defendants' medical judgment does not create a material issue of fact. Instead, Plaintiff's complaints regarding the treatment he received for his pharyngeal cyst and other throat and sinus conditions simply amount to "disagreement with a medical judgment," which are not enough to sustain an Eighth Amendment claim. *Davis*, 992 F.2d at 153 (8th Cir. 1993). Plaintiff has no right to a "requested course of treatment." The uncontroverted facts show that Defendants exercised their professional judgment in treating Pettis and determining that no biopsy was indicated. This professional judgment is supported by another physician. (Filing No. 28-2, Attach. 1, at CM/ECF pp. 3-5; Filing No. 28-3, Attach.

8

2, at CM/ECF p. 2.) Plaintiff has submitted no evidence to the contrary. *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) ("In the face of . . . physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment.") (internal quotations omitted). In light of the undisputed evidence, Defendants provided adequate care to Plaintiff and are entitled to summary judgment. The Eighth Amendment claims against Defendants are therefore dismissed with prejudice.

However, Plaintiff may still have state law claims for medical malpractice. The court declines to exercise jurisdiction over those state law claims given that it is dismissing all federal claims. Therefore, the court will dismiss Plaintiff's state-law claims without prejudice to reassertion in the proper forum.

IT IS THEREFORE ORDERED that:

1. Defendants' Motion for Summary Judgment (filing no. 26) is granted.

2. A separate judgment will be entered in accordance with this Memorandum and Order.

November 5, 2008.  BY THE COURT:

 s/ Joseph F. Bataillon
 Chief United States District Judge